IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MYRON GARCIA,

    Petitioner,

v.                                                                         Case No. 15-cv-377 MCA/SCY

DAVID RIVAS,
PUEBLO OF KEWA, *formerly the Pueblo of Santo Domingo*,

    Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DECISION

THIS MATTER is before the Court on Petitioner's Petition for a Writ of Habeas Corpus for Relief from a Tribal Court Conviction Pursuant to 25 U.S.C. § 1303. ECF No. 1. Petitioner contends that the Pueblo has denied him due process of law by (1) failing to credit time served in tribal custody; and (2) sentencing him to six one year terms of imprisonment, to run consecutively, in violation of the statutory maximum permitted by the Indian Civil Rights Act (ICRA), 25 U.S.C. § 1302(7)(b). ECF No. 1. I find that the Pueblo failed to credit Petitioner with time he served in tribal custody and that Petitioner has already been in tribal custody for longer than his aggregated seventy-two month tribal sentence. Therefore, Petitioner's second argument need not be addressed; regardless of its outcome, Petitioner has already served more time in tribal custody than his maximum tribal sentence. I recommend GRANTING the Petition and ordering that Petitioner be released immediately.

**I.     BACKGROUND**

In October 2009, Petitioner aided Adrian Chavez in disposing of the body of Nevin Garcia after Chavez murdered Garcia. *United States v. Garcia*, Crim. No. 09-3366 (hereinafter *Underlying Case*), ECF No. 139. The crime took place within the boundaries of the Pueblo of

1

Kewa, formally known as the Pueblo of Santo Domingo, a federally recognized Indian tribe. *Id.* At the time of the offense, Petitioner was an enrolled member of the Pueblo.

On October 22, 2009, the Pueblo charged Petitioner with six offenses: aggravated battery, tampering with evidence, party to a crime, disorderly conduct, intoxication, and a probation violation. ECF No. 14, Ex. A.  Petitioner pled guilty in tribal court to the charges on October 24, 2009 and on the same day (two days after he was first charged), the Pueblo sentenced him to six consecutive one year terms of incarceration, a fine, and banishment from the Pueblo.  ECF No. 14, Ex. B.  Following sentencing, Petitioner was initially committed to the Sandoval County Detention Facility to begin serving his tribal sentence. ECF No. 14, Ex. C. On November 4, 2009, Petitioner was transferred to the Towaoc Detention Facility to serve the remaining tribal sentence.

On November 11, 2009, a federal grand jury indicted Petitioner as an accessory after the fact to the murder of Garcia, in violation of 18 U.S.C. §§ 1153 and 3.  *Underlying Case*, ECF No. 21.  Petitioner initially remained at the Towaoc Detention Facility following the federal indictment.  However, on January 12, 2010, this Court issued an Order for Writ of Habeas Corpus *ad Prosequendum* directing the Towaoc Detention Facility to surrender Petitioner to the United States Marshal for the purpose of delivering Petitioner to this Court for proceedings related to the indictment.  *Underlying Case*, ECF No. 35.  Petitioner was surrendered to the United States Marshal on January 25, 2010. ECF No. 14, Ex. E.

Thirty months later, on June 26, 2012, Petitioner pled guilty in federal court to accessory after the fact to second degree murder. *Underlying Case*, ECF No. 139, 140.  On April 24, 2013, Petitioner appeared before the Honorable William P. Johnson for sentencing. *Underlying Case*, ECF No. 176.  Judge Johnson stated that, had Petitioner only been charged federally, the

appropriate sentence would be sixty months. *Underlying Case*, ECF No 189 at 22.  Judge Johnson found, however, that a downward departure was appropriate under UNITED STATES SENTENCING GUIDELINE § 5g1.3 due to Petitioner's tribal sentence. *Id.*  Judge Johnson found that, at the time of sentencing, Petitioner had served forty-two months of his tribal sentence.[1] *Id.* at 23.  Judge Johnson therefore departed forty-two months from the initial sixty-month sentence. *Id.*  Accordingly, Judge Johnson sentenced Petitioner to eighteen months incarceration to be served concurrently with his tribal sentence. *Id.*; *Underlying Case*, ECF No. 182.

Following sentencing, Petitioner remained in the physical custody of the United States Marshal until May 10, 2013 (ECF No. 14, Ex. E.), when he was returned to the physical custody of the Pueblo and redelivered to the Towaoc Detention Facility.  ECF No. 14, Ex F.  On February 25, 2014, Petitioner was transferred to the San Luis Detention Center, where he is currently housed.  ECF No. 14, Ex. F.  The Pueblo ordered the San Luis Detention Center to hold Petitioner until February 25, 2019. ECF No. 14, Ex. F.

Petitioner's trial counsel contacted the Governor of the Pueblo on three occasions requesting that the Pueblo recalculate Petitioner's sentence to account for the time Petitioner was in the physical custody of the United States pending the proceedings in federal court. ECF No. 14, Exs. G, I, and J.  In response, the Pueblo consistently maintained that it would not credit any time Petitioner spent in the physical custody of the United States as time served toward his tribal sentence. ECF No. 14, Exs. H and K.  Petitioner subsequently initiated the instant Petition.

---

[1] This finding was consistent with the Presentence Investigation Report which stated that "[a]lthough the defendant was transferred to federal custody for the instant offense…he will likely not receive credit for this time toward his federal sentence, as this time is being credited to his tribal court case."

3

**II.     Analysis**

**A.  Habeas Corpus Relief Under the Indian Civil Rights Act of 1968 (ICRA)**

"Indian tribes are distinct political entities retaining inherent powers to manage internal tribal affairs." *Poodry v. Tonawanda Band of Senenca Indians*, 85 F.3d 874, 880 (2d Cir. 1996) (citation omitted). Because tribes retain powers of self-government that predate the federal Constitution, constitutional limitations applicable to federal and state authority "do not apply to tribal institutions exercising powers of self-government with respect to members of the tribe or others within the tribe's jurisdiction." *Poodry*, 85 F.3d at 880-81.

Nevertheless, Congress "has plenary authority to limit, modify, or eliminate the powers of local self-government which the tribes otherwise possess." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978) (citations omitted). With the passage of ICRA, Congress limited tribal authority by imposing some basic constitutional norms on tribal governments. *Poodry*, 85 F.3d at 881. The constitutional rights that Indian tribes must extend to those within their jurisdictions are enumerated in ICRA, 25 U.S.C. § 1302. To enforce the rights enumerated in § 1302, Congress has authorized habeas corpus relief. *Santa Clara Pueblo*, 436 U.S. at 60-61. Accordingly, ICRA provides that: "The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian Tribe." 25 U.S.C. § 1303. Habeas relief is generally the sole federal remedy for a violation of ICRA. *See Santa Clara Pueblo*, 436 U.S. at 69-70.

**B.  Exhaustion of Tribal Remedies**

Before reaching Petitioner's claims, I first address the Pueblo's argument that Petitioner did not exhaust his tribal court remedies. ECF No. 11 at 7. The Pueblo contends that, despite its multiple denials of Petitioner's requests that it recalculate his sentence, it remains willing to

reconsider Petitioner's sentence and therefore Petitioner has not exhausted his tribal remedies. *Id.* at 8-9.

When presented with a petition for habeas relief pursuant to § 1303, the federal court must determine whether the petitioner has exhausted his tribal remedies. *Valenzuela v. Silversmith*, 699 F.3d 1199, 1206-07 (10th Cir. 2012). "The tribal exhaustion rule provides that, absent exceptional circumstances, federal courts typically should abstain from hearing cases that challenge tribal court [authority] until tribal court remedies, including tribal appellate review, are exhausted." *Id.* at 1206 (internal quotations marks and citation omitted). However, "exhaustion of tribal court claims is not an inflexible requirement." *Selam v. Warm Springs Tribal Correctional Facility*, 134 F.3d 948, 953 (9th Cir. 1998). For instance, exhaustion of tribal remedies may not be required where a petitioner establishes that "exhaustion would have been futile or that [] the tribal court of appeals offered no adequate remedy." *Alvarez v. Tracy*, 773 F.3d 1011, 1016 (9th Cir. 2014); *see also Valenzuela*, 699 F.3d at 1207 (recognizing futility and inadequate opportunities as exceptions to the tribal exhaustion rule).

Petitioner has established that no adequate remedy existed to pursue habeas relief in a tribal forum, and, furthermore, that pursuit of any available avenue that did exist would have been futile. First, in *Necklace v. Tribal Court of Three Affiliated Tribes of Fort Berthold Reservation*, the court held that where there existed no formal habeas corpus procedure in the tribal forum, the petitioner was not required to exhaust tribal remedies. 554 F.2d 845, 846 (8th Cir. 1977). Here, the Pueblo represents that "[t]he sitting Governor of the Pueblo serves as the Tribal Court Judge. The decisions of the Tribal Court are guided by the customs and traditions of the Pueblo. There are no written rules of procedure for the Tribal Court." ECF No 11, fn. 3.

Thus, similar to *Necklace*, it does not appear that the laws of the Pueblo contain formal avenues for Petitioner to pursue habeas relief in a tribal forum.

Second, I am not persuaded by the Pueblo's argument that Petitioner has failed to exhaust tribal remedies because the Pueblo remains open to reconsidering its decision in the event Petitioner presents "credible and convincing evidence" that his sentence has been miscalculated. The Pueblo cannot successfully argue that, as long as the Governor can change his mind, there has been no exhaustion. For the exhaustion requirement to have meaning, an ability to exhaust must exist. Because it appears that the Pueblo's procedures would always allow the Governor to change his mind, accepting this argument would mean that habeas relief would never be available to a Pueblo prisoner because that prisoner would never be able to exhaust tribal remedies.

Similarly, the Pueblo's argument that Petitioner can still present "credible and convincing" evidence has no force. Petitioner has sent multiple requests to the Pueblo to reconsider his sentence and all have been denied. At this point, this issue is less about the credibility of evidence Petitioner may present and is instead about the legal determination of whether Petitioner was serving time on his tribal sentence while he was in the physical custody of the United States. Accordingly, requiring Petitioner to submit further repeated requests to the Pueblo to reconsider its calculation of his sentence would be futile. I therefore recommend concluding that the tribal exhaustion rule presents no bar to the consideration of Petitioner's claims.

### C.  The Pueblo's Calculation of Petitioner's Tribal Sentence

Petitioner claims that the Pueblo's refusal to credit toward his tribal sentence the time he spent in the physical custody of federal authorities violates ICRA, § 1302(8). This provision

states that no tribe shall "deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law." *Id.* Petitioner argues that because he was transferred to federal custody pursuant to a writ of habeas corpus *ad prosequendum*, the Pueblo retained primary jurisdiction over him and, therefore, he should have received credit toward his tribal sentence for the time he spent in federal custody during the pendency of the federal proceedings.

A writ of habeas corpus *ad prosequendum* "permits one sovereign—called the 'receiving sovereign'—to 'borrow' temporarily a person in the custody of another sovereign—called the 'sending sovereign'— for the purpose of prosecuting him." *Jake v. Herschberger*, 173 F.3d 1059, 1061 n.1 (7th Cir. 1999). The "sending sovereign" is the sovereign who obtained primary jurisdiction over the prisoner by being the first sovereign to take the prisoner into custody. *Newman v. Cozza-Rhodes*, 526 Fed. App'x. 818, 821 (10th Cir. 2013) (unpublished).[2] "Because the receiving sovereign merely obtains limited jurisdiction over the 'borrowed' prisoner, the prisoner is still under the jurisdiction of the sending sovereign, and is considered to be in the custody of the sending sovereign not the receiving sovereign." *Jake*, 173 F.3d at 1061 n.1; *see also United States v. Welch*, 928 F.2d 915, 916 n.2 (10th Cir. 1991) (noting that a "state does not relinquish jurisdiction when it delivers a prisoner for federal prosecution pursuant to a federal writ of habeas corpus ad prosequendum….The state merely 'lends' the prisoner…."). Thus, although a prisoner might be in the *physical custody* of the receiving sovereign, the prisoner

---

[2] The Court relies upon *Newman* and other unpublished opinions in ruling on the Petition. The Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. *See* 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court finds that the unpublished opinions it has cited have persuasive value with respect to a material issue, and will assist the Court in its proposed disposition of this case.

remains a prisoner of the sending sovereign for the duration of the receiving sovereign's proceedings against him. *Id.*; *see also Hernandez v. U.S. Attorney General*, 689 F.2d 915, 918 (10th Cir. 1982) (concluding that a Colorado prisoner transferred to federal custody pursuant to a writ of habeas corpus *ad prosequendum* remained a "state prisoner").[3]

In response to this authority, the Pueblo does not directly challenge the widely accepted conclusion that physical transfer of a prisoner through a writ of habeas corpus *ad prosequendum* is merely a "loan" of the prisoner that does not alter which sovereign has primary jurisdiction. Instead, it argues that Judge Johnson gave Petitioner credit for the time Petitioner spent in United States Marshal custody and that retroactively allowing Petitioner to receive credit against his tribal sentence for the same time period would violate 18 U.S.C. § 3585(b). ECF 23 at 2. This statute states that a "defendant shall be given credit toward the service of a term of imprisonment for any time he spent in official detention prior to the date the sentence commences…that has not been credited toward against another sentence." *Id.*

The Pueblo's argument, however, is founded on the incorrect assertion that Petitioner's transfer to the physical custody of the United States Marshal pursuant to a writ of habeas corpus *ad prosequendum* interrupted and stayed completion of his tribal sentence so that his time in physical custody of the United States Marshal did not count toward his tribal sentence. As

---

[3] A sending sovereign may choose to relinquish jurisdiction over a prisoner. *See Hernandez v. U.S. Attorney General*, 689 F.2d 915, 918 (10th Cir. 1982) (finding that Colorado did not relinquish jurisdiction over prisoner by his production in federal court and that voluntary surrender of one sovereign to another is a matter of comity and is to be determined by the sovereign having custody."). The Pueblo asserts in a footnote to its reply that, as the sending sovereign, it can now choose to characterize Petitioner's time in the physical custody of the U.S. Marshal as time in the primary custody of the federal government. ECF No. 23 at n. 1. The Pueblo has not, however, demonstrated that it took any action to transfer primary custody to the federal government. To the contrary,the federal government physically obtained Petitioner through a mechanism used to borrow a prisoner (a writ of habeas corpus *ad prosequendum*). *See Taccetta v. Federal Bureau of Prisons*, 606 Fed. App'x 661, 663 (3d Cir. 2015) (unpublished) (stating that "temporary transfer of a prisoner pursuant to a writ of habeas corpus *ad prosequendum* does not constitute a relinquishment"). Further, that the federal government returned Petitioner to the Pueblo rather than sending him to the Bureau of Prisons after his federal sentencing demonstrates that the Pueblo retained primary custody of Petitioner. Thus, while the Pueblo is correct that it could have relinquished primary custody of Petitioner to the United States, it did not choose to do so in this case. The Pueblo cannot now, after the fact, successfully characterize Petitioner's custody as something it was not.

demonstrated by the cases above, the Pueblo's assertion that Petitioner was not serving time on his tribal sentence during the pendency of the federal proceedings is incorrect. A sending sovereign retains primary custody of a person while that person is on loan to another sovereign pursuant to a writ of habeas corpus *ad prosequendum*.

      This rule makes sense. Unfair results would ensue from a rule that the physical transfer of a person pursuant to a writ of habeas corpus *ad prosequendum* automatically interrupted a prisoner's sentence and prevented that prisoner from continuing to obtain credit for a sentence that prisoner had already started serving. For instance, if a prisoner transferred to the physical custody of the United States Marshal to face federal charges was then acquitted of those federal charges, it would be unfair for that prisoner to then return to the sending sovereign to complete that sentence with no credit for the time spent in physical United States Marshal's custody.[4] Similarly, if the prisoner was convicted on federal charges and the federal sentence received was less than the time in physical custody of the United States Marshal, the prisoner would receive neither federal nor non-federal credit for at least part of the time he was in continual custody since beginning to serve his non-federal sentence. Such a result is contrary to one of the purposes of 18 U.S.C. § 3585—ensuring that a prisoner is given credit for time spent in official detention.

      This result would also be contrary to the principle that a sentence should be served continuously and, unless uninterrupted by some fault of the prisoner, the prisoner should not be required to serve it in installments. *See Weekes v. Fleming*, 301 F.3d 1175, 1179 (10th Cir. 2002). To accept the Pueblo's argument would be to reject this principle and find that the service of a sentence stops through a writ of habeas corpus *ad prosequendum* transfer and then

---

[4] Further, pretrial release is not an option for these prisoners because, rather than being released if not found to be a flight risk or danger to the community, the prisoner would have to be returned to the sending sovereign for completion of the prisoner's uncompleted sentence.

starts again once the prisoner is returned to the sending jurisdiction.  I am unaware of any case in which a transfer through a writ of habeas corpus *ad prosequendum* has interrupted the service of a sentence in this manner.

Furthermore, the Pueblo's argument misapprehends the purpose and application of § 3585.  Section 3585's purpose is to provide direction to the Attorney General with regard to computing "the amount of credit after the defendant begins his sentence."  *United States v. Wilson*, 503 U.S. 329, 333, 336 (1992).  As the Pueblo correctly asserts, the final phrase of § 3585 "authorizes credit *only* for time that 'has not been credited against another sentence.'" *Wilson*, 503 U.S. at 335 (emphasis added).  This proscription, however, only applies to the Attorney General in deciding how to compute "the amount of credit after the defendant begins his sentence."  *Wilson*, 503 U.S. 329, 333.  In deciding what sentence to impose, a federal judge can choose to downward depart or downward vary from a recommended United States Sentencing Guideline Sentence, *United States v. Waseta*, 647 F.3d 980 (10th Cir. 2011), or to order that a sentence run concurrent to an undischarged term of imprisonment pursuant to 18 U.S.C. § 3584.  But even a federal judge has no ability to determine the amount of credit a prisoner receives for time spent in custody prior to sentencing.  *Wilson,* 503 U.S. at 335. It follows then that the Pueblo's attempt to offensively invoke § 3585 as a challenge to Petitioner's motion must therefore be rejected.

Moreover, the Pueblo is incorrect in asserting that Judge Johnson gave Petitioner § 3585 credit for time spent in physical United States Marshal custody prior to Petitioner's federal sentencing.  Judge Johnson explicitly found that Petitioner was serving his *tribal* sentence while in the temporary custody of federal authorities.  *Underlying Case*, ECF No 189 at 22-23.  As explained above, because applying credit under § 3585 is the province of the Attorney General,

even if Judge Johnson had wanted to give Petitioner such credit, he had no authority to do so. Judge Johnson did, however, have authority to downward depart from Petitioner's recommended guideline sentence of sixty months. Judge Johnson exercised this authority and sentenced Petitioner to an eighteen month term of imprisonment, no part of which included presentence confinement credit under § 3585.

Granted, the reason for Judge Johnson's forty-two month departure was that Petitioner had already spent forty-two months in tribal custody (thirty-nine of which he was in the physical custody of the United States Marshal). *Underlying Case*, ECF No 189 at 22. From the Pueblo's perspective, a downward departure of forty-two months is effectively the same as a sixty-month sentence with forty-two months credited for time served. Thus, it may seem incongruous that the first scenario results in a more than three year reduction in prison exposure as compared to the second scenario.[5] But a departure made to arrive at a sentence before the sentence is announced is different than a credit applied to a sentence after it is announced. The bottom line is that Judge Johnson ultimately sentenced Petitioner to an eighteen month term of imprisonment and no credit pursuant to § 3585 was applied to the sentence Judge Johnson issued.

Alternatively, the Pueblo argues that "this Court's determination that Petitioner's tribal and federal sentences run concurrently does not bind the Pueblo" and "[t]he Pueblo is not required to run its sentences of Petitioner concurrently with Petitioner's federal sentence." ECF 23 at 3. The Pueblo is correct that, as a separate sovereign, it can choose to run a sentence consecutive to some other undischarged term of imprisonment. Thus, if the federal court had primary custody of Petitioner and sentenced him first, the Pueblo arguably could have chosen to run his tribal sentence consecutive to his federal sentence. But the Pueblo sentenced Petitioner

---

[5] No one is arguing that Petitioner should not receive credit against his tribal sentence for the 3 months he spent in tribal custody prior to physically being transferred to federal custody. Thus, the effect of a downward departure versus a credit for time served is 39 rather than 42 months.

first and Judge Johnson's decision to run Petitioner's federal sentence concurrent to the tribal sentence is beyond the Pueblo's purview to question.

In sum, I find no reason to depart from the general rule that a prisoner transferred to federal custody pursuant to a writ of habeas corpus *ad prosequendum* remains the prisoner of the sending jurisdiction.  As such, the time Petitioner spent in federal custody in this case must be credited against his tribal sentence. *See Settle v. Cozza-Rhodes,* Civ No. 15-00464, 2015 WL 7301694 (D. Colo. October 23, 2015) (unpublished) ("The time spent in federal detention under a writ of habeas corpus *ad prosequendum* is credited against the state sentence but not against the federal sentence."); *McCollough v. O'Brien*, Civ. No. 7:06-00712, 2007 WL 2029308, *2 (W.D. Va. July 10, 2007) (unpublished) (concluding that the petitioner could not be given credit under Section 3585(b) for time spent in federal detention pursuant to a writ of habeas corpus *ad prosequendum*).

This conclusion is not altered by the Tenth Circuit's decision in *Brown v. Perill*, which, although not cited by the parties, I would be remiss in not discussing. *See Brown v. Perill,* 28 F.3d 1073, 1075 (10th Cir. 1994) ("*Brown II").*  The Tenth Circuit in *Brown II* concluded that a prisoner's custody for purposes of 18 U.S.C. § 3568 (the predecessor of § 3585) "transmuted" to federal custody when the prisoner was physically transferred from state to federal custody through a writ of habeas corpus *ad prosequendum* where the prisoner "was in federal prison pursuant to a writ for over a year and a half before he was released by the federal court on bond, and . . . not even tried for his federal crimes for an additional seven months." *Id*. at 1075.  If Petitioner's lengthy time in physical United States Marshal custody caused primary tribal custody to transmute into primary federal custody, my above recommendation would be different.  Arguably, once this transmutation occurred, Petitioner would no longer be on loan to

the federal government; instead, he would be in primary federal custody and this time in custody would not count toward his tribal sentence.

*Brown II*, however, involved application of § 3568 rather than § 3585 and, therefore, does not apply to Petitioner's situation. The Tenth Circuit was careful to limit its holding in *Brown II*. It recognized that its holding was fact specific and that it only applied to what "constitutes 'custody' for purposes of § 3568." *Id.* at 1075. As the United States Supreme Court has recognized, when Congress replaced § 3568 with § 3585, it made significant changes. *United States v. Wilson*, 503 U.S. 329, 337 (1992) (recognizing "at least three ways" Congress altered § 3568 when it enacted § 3585). Unlike § 3568, which mandated that "[t]he Attorney General shall give [a person convicted of an offense] credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed," the Supreme Court determined that the final phrase of § 3585(b) "authorizes credit only for time that 'has not been credited against another sentence.'" *Id*. at 332, 334. Had this restriction existed in § 3568, the Tenth Circuit could not have found that the petitioner's custody had transmuted in a way that allowed him to receive simultaneous federal and state credit for time spent in physical pre-sentencing federal custody after having been transferred via a writ of habeas corpus *ad prosequendum* from state custody where he was serving a state sentence. *See Brown v. Perrill,* 21 F.3d 1008 (10th Cir. 1994) ("*Brown I*") (setting forth factual underpinnings for *Brown I* and *Brown II*). Thus, applying the Tenth Circuit's decision in *Brown II,* which dealt with § 3568, to the current facts, would be inconsistent with the Supreme Court's decision in *Wilson*. *See Wise v. Chester*, Civ. No. 09-3283, 2010 WL 4180678, n.1 (October 20, 2010) (unpublished) (applying § 3585 and declining to apply *Brown* on the basis of the repeal of § 3568).

It would also be inconsistent with the Attorney General's application of, and numerous courts' interpretation of, the effect of a writ of habeas corpus *ad prosequendum* since the enactment of § 3585.  As set forth above, Section § 3585's purpose is to provide direction to the Attorney General with regard to computing "the amount of credit after the defendant begins his sentence."  *Wilson*, 503 U.S. 329, 333.  Once a defendant in physical custody of federal authorities pursuant to a writ of habeas corpus *ad prosequendum* receives his or her federal sentence but is still in the process of serving an underlying sentence from a sovereign with primary jurisdiction, the Attorney General should transfer the defendant back to that sovereign's custody to serve the remaining time on the underlying sentence.  *See Binford v. United States*, 436 F.3d 1252, 1256 (10th Cir. 2006) (stating that the delivery of a defendant in federal custody under a writ of habeas corpus *ad prosequendum* to the Bureau of Prisons following sentencing in federal court was in error).  The Attorney General followed this same practice in Petitioner's case by returning Petitioner to the Pueblo after he was sentenced rather than sending him to a Bureau of Prisons ("BOP") facility to begin serving his eighteen month federal sentence.  That is, had primary custody of Petitioner transmuted to the federal government, he would have been sent to a BOP facility after Judge Johnson sentenced him.

Recent decisions have further affirmed the general rule that a prisoner obtained by a writ of habeas corpus *ad prosequendum* is considered to be in the temporary custody of the receiving sovereign regardless of the extent of time the prisoner is detained under the writ.  *Rios v. Wiley*, 201 F.3d 257, 274 (3d Cir. 2000) *superseded on other grounds as recognized by United States v. Saintville*, 218 F.3d 246, 249 (3d Cir 2000); *Taccetta*, 606 Fed. App'x at 664 (stating that "the length of time in federal detention is irrelevant to the question of relinquishment" (internal quotation marks omitted)); *Huffman v. Perez*, 230 F.3d 1358, 2000 WL 1478368, *2 (6th Cir.

14

2000) (unpublished) ("the length of time [the petitioner] spent on the federal writ of habeas corpus *ad prosequendum* does not require a departure from the general rule prohibiting credit on a federal sentence for time spent serving a state sentence"); *Diaz-Fontanez v. Daniels*, Civ. No. 13-2531, 2014 WL 1660482, \*\*2-3 (D. Colo. April 25, 2014) (concluding that prisoner obtained by writ of habeas corpus *ad prosequendum* was in the temporary custody of federal authorities for the five years he was detained pursuant to the writ); s*ee also Settle v. Cozza-Rhodes*, Civ. No. 15-00464, 2015 WL 7301694, \*4 (D. Colo. October 23, 2015) (concluding that prisoner in custody of federal authorities for nearly three years was in temporary custody and that the state did not relinquish primary jurisdiction over the prisoner).  In contrast, I am unaware of any instance since § 3585 became effective in which a court has found that primary custody of a prisoner transferred pursuant to a writ of habeas corpus *ad prosequendum* transmuted to the receiving jurisdiction based on the amount of time spent in the receiving jurisdiction.

Indeed, such a finding would be unworkable under § 3585.  As the Tenth Circuit indicated in *Brown II*, determining exactly when temporary custody transmutes into actual custody would be difficult.  *See Brown II*, 28 F.3d at 1075 ("we are unwilling to announce a per se rule as to how long a state prisoner may be 'on loan' to federal authorities without the authorities taking custody of the prisoner.").  Because § 3568 allowed double credit, no need existed for the *Brown* court to define exactly when custody transmuted from one sovereign to another.  *See Brown I*, 21 F.3d at 1008-09 (setting forth facts that demonstrate petitioner received double credit); *Tighe v. Booker*, No. 97-1046, 1997 WL 589190, \*1 (10th Cir. 1997) (unpublished decision) (relying on *Brown* to conclude that the prisoner could receive credit toward his federal sentence despite the fact that that time was credited toward his state sentence).  In contrast, because § 3585 does not allow double credit, allowing transmutation of custody to

occur in a factual scenario governed by § 3585 would require a court or the BOP, in an effort to determine where to credit portions of time in custody, to decide exactly when physical custody transmuted from one sovereign to another.  For all of the above reasons, I conclude that the applicability of statements in *Brown* indicating that custody of a prisoner pursuant to a writ of habeas corpus *ad prosequendum* could "transmute" to federal custody did not survive the repeal of § 3568.

### III.     CONCLUSION

For the foregoing reasons, I recommend GRANTING the Petition for a Writ of Habeas Corpus for Relief from a Tribal Court Conviction Pursuant to 25 U.S.C. § 1303. ECF No. 1. Because Petitioner began serving his aggregate six year tribal sentence on October 24, 2009, Petitioner completed his combined tribal sentences on October 24, 2015.

*[signature: Steve Yarbrough]*
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**